UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| **NINA DIXON,** | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | **JURY DEMAND** |
| vs. | ) | |
| | ) | |
| **DELTA AIR LINES, INC.** | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

**COMPLAINT**

Plaintiff NINA DIXON ("Plaintiff" or "DIXON"), by and through counsel of record, files his Complaint against Delta Air Lines, Inc. ("Defendant" or "DELTA"), and alleges the following:

## I. INTRODUCTION

1. This is a civil action to make the Plaintiff whole for Defendant's unlawful retaliation against her because of her legally protected activities, including participation by making and offering to the Court an affidavit in support of her former co-worker Brian Booker's claims against DELTA, and factually challenging DELTA's alleged legitimate, nondiscriminatory reasons and alleged undue hardship defenses offered in that case, as well as the sworn testimony of DELTA's Station Manager, Kathy Lee. (*See*, Booker v. Delta Air Lines, Inc., 2:23-cv-2725-SHL, ECF No. 51-5).[1] The retaliation against DIXON by DELTA for her aforementioned protected activities was in violation of Title VII of the Civil Rights Act of 1964, Equal Employment Opportunities Act, 42 U.S.C. § 2000e *et seq*. ("Title VII") and the Americans with

[1] **Attached as Exhibit 1**

Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq*. ("ADAAA"). Defendant's decision to select a younger and inappropriate candidate for a promotion instead of herself was an act of unlawful discrimination are also in violation of Title 29 U.S.C. Chapter 14 § 621 *et seq*. ("ADEA").

## II. PARTIES

2. Plaintiff, at all times relevant to this Complaint, resided in Shelby County, Tennessee.

3. Defendant Delta Air Lines, Inc. is a commercial entity incorporated in the State of Delaware, with its principal corporate address at 1030 Delta Blvd., Dept. 982, Atlanta, GA, 30354-1989. At the time of the events subject of this Complaint herein, Defendant regularly did business in the Memphis, Shelby County, Tennessee area and employed more than 50 persons in the said area at the time of the facts that form the basis of this Complaint.

4. Valid service of process may be obtained on Defendant Delta Air Lines, Inc., via its registered agent in Tennessee: Corporation Service Company, 2908 Poston Ave., Nashville, TN 37203-1312.

5. Delta Air Lines, Inc. has received federal funds from federal departments and agencies and falls under the scope and protections of the Rehabilitation Act.

## III. JURISDICTION AND VENUE

6. Plaintiff brings this action under 28 U.S.C. § 1331, alleging the original jurisdiction of this Honorable Court over this private suit to enforce federal civil rights and employment law protections.

7. Venue is proper in the United States District Court for the Western District of Tennessee pursuant to 28 U.S.C. § 1391(b)(2) because the unlawful employment practices occurred within Shelby County, Tennessee, where Plaintiff works, where Plaintiff suffered the

unlawful employment practices and resultant damages, and where Plaintiff would have received a promopton to suopervisor by Defendant during the below referenced time period in the absence of its unlawful employment practices.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff has met all procedural requirements for filing this Complaint, including administrative exhaustion required for jurisdiction in this Court.

9. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and did so within 300 days of the actions of which he complained. Plaintiff filed her Charge for violations of the Title VII and the ADAAA on July 20, 2025 (Charge No. 490-2025-03476). On or about August 21, 2026, Plaintiff received her *Right to Sue Notices* from the EEOC for the aforementioned Charge and, therefore concluded the process of exhaustion requirements with the EEOC. Accordingly, this lawsuit and supporting Plaintiff's claims are properly and timely filed within ninety (90) days of issuance by the EEOC of Plaintiff's Notices of Right to Sue Letter on August 21, 2026. **(Exhibit 2, "Notice of Right to Sue").**

## V. STATEMENT OF FACTS

10. Plaintiff began work as a Customer Service Agent (CSA) for Delta Air Lines, Inc. in May 2007.

11. Plaintiff was transferred to CSA working within the DELTA SKY Club in 2012, working at Memphis International Airport and Atlanta International Airport.

12. In May of 2021, Plaintiff was transferred back to work full-time as a CSA in the DELTA SKY Club at Memphis International Airport.

13. On October 17, 2024, Plaintiff provided an Affidavit to the attorneys of her DELTA co-worker, Brian Booker, confirming Plaintiff's personal knowledge in support of factual

allegations made by Booker against DELTA during his litigation based on disability discrimination and retaliation, and, specifically, contradicting sworn deposition testimony of DELTA Station Manager Kathy Lee that DELTA had never approved use of stools for use of CSAs behind its ticket counter even as a reasonable accommodation under the ADAAA. Plaintiff's aforementioned Affidavit was provided to DELTA's attorneys Mr. Booker's lawsuit against it on November 6, 2024, and then subsequently was filed as part of docket for the District Court for the Western District on January 27, 2025. (Booker v. Delta Air Lines, Inc., 2:23-cv-2725-SHL, ECF No. 51-5).

14. The position of SKY Club Lead in Memphis was advertised on October 7, 2024 through DELTA's *MEM Operations*.

15. Plaintiff received an interview for the position of SKY Club Lead on November 4, 2024, which included Station Manager Kathy Lee, Christopher Reese, and Regional Operations Manager – SKY Club, Emily Williams. At this time, Plaintiff was aged sixty (60).

16. At some time in October or November 2024, Plaintiff's DELTA co-worker. Yvonne Ford also received an interview for the position of SKY Club Lead. At this time, on information and belief, Ms. Ford's age was forty-eight (48).

17. On January 2, 2025, Station Manager Kathy Lee asked Plaintiff to meet her for a one-on-one, hour-long in-person meeting. In that meeting, Lee told Plaintiff that she and her boss were impressed with Plaintiff's work performance and her positive attitude, and that the other interviewees had not been prepared for their interviews or thought about the Lead position to the same degree as clearly shown by Plaintiff. Specifically, Lee stated to Plaintiff that her co-worker Yvonne Ford, was too "rough around the edges" and intimated she was unsuitable for the position of SKY Club Lead. Importantly, the meeting with Lee ended after Lee took a call from "Sarah" at

DELTA HR. Plaintiff heard her name mentioned during this call, and Lee replied, “I am speaking with her as we speak.” Immediately, Lee’s face visibly became stern, she agreed to call back “Sarah” at HR, and then she curtly ended the meeting.

18. Following the meeting between Lee and Plaintiff on January 2, 2025, Lee did not speak to Plaintiff again about the SKY Club Lead position.

19. Following the meeting between Lee and Plaintiff on January 2, 2025, Lee blocked Plaintiff from attending various seminars, including the One L Academy in February and March 2025 which are intended to advance Plaintiff’s career and skills.

20. Plaintiff was told by her co-worker, Yvonne Ford, that her mind went blank during her interview for SKY Club Lead and the interview went badly.

21. On January 23, 2025, Lee provided a sworn declaration to DELTA’s attorneys, the same attorneys who received a copy of Plaintiff’s aforementioned Affidavit. In her sworn declaration, Lee conceded she had allowed the use of stools by CSAs behind the ticket counter at Memphis International Airport during periods of 2020 and 2021. (Booker v. Delta Air Lines, Inc., 2:23-cv-2725-SHL, ECF No. 53-6, ¶9).

22. On or about February 21, 2025, the vacant position of SKY Club Lead at Memphis International Airport was readvertised and posted through MEM Operations. Lee told Plaintiff she did not need to re-interview for the position.

23. On or about March 21, 2025, Plaintiff was interviewed again for the position of SKY Club Lead, as one of an alleged twenty-three other DELTA employees who applied for the position. Of the twenty-three candidates, however, DELTA interviewed only Plaintiff and Ford.

24. Plaintiff and Ford were interviewed by Regional Operations Manager – SKY Club, Ms. Emily Williams; Operations Service Manager Suzan Rustemi, and MEM Operations Service

Manager Rodericke Cason. Although Lee was not part of the interview panel for Plaintiff in February, she remained Station Manager until March 30 or April 1, 2025 with oversight of all of Delta's operations in Memphis, including authority to decide on the promotion to SKY Club Lead.

25. Before interviews are set, Lee will discuss the selected interviewees with her boss and HR.

26. Upon information and belief, Mr. Cason was also aware of Plaintiff's Affidavit in support of Mr. Booker's lawsuit. Mr. Cason was a manager who reported directly to Lee.

27. On or about March 25, 2025, DELTA informed its employees, including Plaintiff, that Yvonne Ford was awarded the promotion to SKY Club Lead. DELTA claims Ms. Ford was a Passenger Service Agent, and "[f]or that reason alone," she was the successful candidate.[2]

28. Upon information and belief, Plaintiff contends Ms. Ford had incurred discipline, which pursuant to DELTA policies, prevented her from advancement to the SKY Club Lead position at the time of her respective interviews, and, DELTA delayed Ms. Ford's promotion to Lead until Ms. Ford's discipline was no longer active.

29. Lee confirmed on August 29, 2024, she was aware Mr. Booker's litigation against DELTA was then set for trial on April 21, 2025 and that she would be called as a witness to testify.[3] (Booker v. Delta Air Lines, Inc., 2:23-cv-2725-SHL).

30. Defendant's Position Statement to the EEOC, dated December 6, 2025, stated that Lee retired from DELTA as Station Manager effective April 1, 2025.

31. Until she the date retired, Lee continued remained Station Manager with oversight of all of Delta's operations in Memphis, including authority to decide on the promotion to SKY Club Lead.

---

[2] DELTA EEOC Position Statement, dated December 6, 2025.
[3] Deposition of Kathy Lee, August 29, 2024, p.16

32. During her employment with DELTA, Plaintiff did not receive a written warning or reprimand.

33. During her employment with DELTA, Plaintiff did not receive a suspension or probation.

34. At no time has Plaintiff been notified that her work performance was in any way deficient.

35. Throughout the course of her employment, Plaintiff has provided loyal and diligent service to DELTA.

36. Further, DELTA retaliated against Plaintiff for exercising her rights under Title VII and the ADAAA, namely her right to participate in protected activity.

37. Yvonne Ford was a similarly situated employee to Plaintiff, who prior to her promotion to Lead of SKY Club, had not taken part or engaged in activities protected under Title VII or the ADAAA.

38. Yvonne Ford was a similarly situated employee to Plaintiff, and had not taken part or engaged in activities prior to her promotion to Lead of the SKY Club, specifically, Ford did not provide an Affidavit or other sworn statements in support of any DELTA co-worker, including but not limited to Brian Booker, to confirm personal knowledge supporting factual allegations made by Booker or other DELTA employee against DELTA during litigation based disability discrimination and retaliation, or contradicting sworn testimony of DELTA's Station Manager Kathy Lee in said lawsuit.

39. DELTA's actions toward Plaintiff were knowing and intentional, willful, malicious, and/or reckless and were carried out with complete disregard for the consequences of such actions and Plaintiff's rights under federal law.

40. Plaintiff has been deprived of employment opportunities and has otherwise been subjected to DELTA's retaliation for her protected activities in support of a co-worker's rights under the ADAAA and to contradict and challenge the sworn false testimony of Station Manager Kathy Lee in support of DELTA's reasons for its failure or refusal to accommodate said co-worker's disability under the ADAAA and acts of retaliation. DELTA's unlawful actions against Plaintiff caused her to suffer economic losses including lost wages and benefits, as well as future pecuniary losses, interest, reasonable attorney fees, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses and damages, in violation of Title VII and the ADAAA, respectively, prohibiting retaliatory treatment.

## VI. CAUSES OF ACTION

### COUNT ONE: RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e-3 et seq., (Title VII)

*Plaintiff repeats, re-alleges, and incorporates the paragraphs above as if fully set forth herein.*

41. DELTA retaliated against Plaintiff in violation of the Title VII, 42 U.S.C. § 2000e-3, which provides:

> (a) **Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings.** It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment … because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.
>
> 42 U.S.C. § 2000e-3.

42. Plaintiff acted in good faith with a reasonable belief that she was opposing unlawful disability discrimination and unlawful retaliation, and the false testimony offered by DELTA's Station Manager to thwart and defeat a lawsuit of a co-worker for disability discrimination and

retaliation.

43. As pleaded above, Defendant's retaliation included adverse actions. The Defendant retaliated against Plaintiff for participating in protected activity and subjecting her to adverse employment actions, including unlawful refusal to promote her to the position of SKY Club Lead.

44. All these actions and reprisals against Plaintiff because her protected activities were such that they would tend to dissuade a reasonable person from engaging in protected activity in opposing unlawful activity of Defendant.

45. As pleaded above, Defendant's violation of Title VII and the ADAAA injured and damaged the Plaintiff so that Plaintiff suffered damages caused by the Defendant's retaliation.

46. Defendant has intentionally, deliberately, willfully, and callously disregarded the rights of Plaintiff.

47. By reason of the Defendant's retaliation, Plaintiff is entitled to all legal and equitable remedies available under 42 U.S.C. § 2000e, *et seq*.

48. Defendant is liable to Plaintiff for compensatory damages, including for injury from humiliation, embarrassment, emotional pain, suffering, inconvenience, and mental anguish and other non-pecuniary losses, punitive damages, backpay, equitable relief, injunctive relief, attorney's fees, expenses, costs and such other damages and relief as the jury or the Court determine to be appropriate.

## COUNT TWO: RETALIATION IN VIOLATION OF 42 U.S.C. § 12101 *et seq.* (ADAAA)

*Plaintiff repeats, re-alleges, and incorporates the paragraphs above as if fully set forth herein.*

49. The ADA Amendments Act of 2008 (ADAAA) applies to Plaintiff's ADA claims of DELTA's retaliation against Plaintiff, because those actions took place on or after January 1,

2009. Pub. L. 110–325, § 8, 122 Stat. 3553 (Sep. 25, 2008), codified at e.g., 42 U.S.C. § 12101 *et seq*.

50. Defendant's conduct, as specifically alleged in paragraphs above, constituted violations of Plaintiff's rights under the Americans with Disabilities Act (as amended), 42 U.S.C. § 12203(a)-(b). Specifically, said violation(s) occurred as a result of Defendant's retaliatory actions against Plaintiff following her participation in protected activities in support of ADAAA claims by a co-worker, Brian Booker, namely discrimination and retaliation, and submission of a sworn affidavit fir filing and disclosure within Booker's litigation against DELTA.

51. At all relevant times, Defendant was a "covered" employer pursuant to 42 U.S.C. § 12111(5)(A) of the ADAAA.

52. Further, Defendant's refusal to promote Plaintiff to Lead of its SKY Club following submission of her sworn affidavit and protected activities was unlawful and punitive, and thus unlawfully retaliation against Plaintiff for her exercise and enjoyment of rights granted under the ADAAA.

**COUNT THREE: TITLE 29 U.S.C. CHAPTER 14 § 621 *ET SEQ.*,
AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)**

*Plaintiff repeats, re-alleges, and incorporates the paragraphs above as if fully set forth herein.*

53. Defendant discriminated against Plaintiff in violation of Title 29 U.S.C. Chapter 14 § 621 *et seq*., Age Discrimination in Employment Act ("ADEA").

54. Defendant's violation of the ADEA injured and damaged Plaintiff, then a sixty-year-old female, who was not promoted in favor of an unqualified person aged about forty-eight at the relevant time between October 2024 and March 31, 2024. Defendant's Station Manager told Plaintiff directly she was the superior candidate for the position, and even derided Ms. Ford

as too "rough around the edges" for the position. Ms. Ford also told Plaintiff that her interview for the position had gone badly. Defendant, first through Lee, blocked Plaintiff from being awarded the position where she was the superior candidate, and later while Lee was still Station Manager but not part of the interview panel, subjected Ford and Plaintiff to additional interviews. Lee also blocked Plaintiff's attempts to attend seminars intended to advance her career.

55. Defendant has intentionally discriminated Plaintiff because of her age.

56. Defendant also negligently, recklessly or intentionally inflicted emotional distress upon Plaintiff.

57. By reason of the Defendant's acts of discrimination, Plaintiff is entitled to all legal and equitable remedies available under the ADEA.

## VII. PRAYER FOR RELIEF

***WHEREFORE**, Plaintiff respectfully prays this Honorable Court:*

A. Declare and adjudge that Defendant violated Plaintiff's rights under, 42 U.S.C. § 2000e-3 *et seq*., 42 U.S.C. § 12101 *et seq,* and Title 29 U.S.C. Chapter 14 § 621 *et seq*.

B. Promote Dixon to the position of supervisor and order Defendant to pay her wages earned in that current position by Ms. Yvonne Ford;

C. Order Defendant to immediately cease and desist from all retaliatory and discriminatory behavior as described in this complaint;

D. Award Plaintiff nominal damages;

E. Award Plaintiff compensatory damages, including appropriate back-pay, based on the differential of her regular $45.50 per hour and the amount paid to the SKY Club Lead, Yvonne Ford, plus applicable benefits, including but not limited to Shared Rewards, Afternoon Shift Premium, Evening Shift Premium, Vacation Pay, Holiday Pay, unpaid social security quarters,

bonuses, and contributions to any applicable 401K or similar retirement account;

F. Award an amount to offset additional tax liability incurred by Plaintiff for any award of back-pay which he would not have incurred had he received pay and benefits from Defendant in the regular course of employment;

G. Award Plaintiff compensatory damages, including emotional pain and suffering;

H. Award all out-of-pocket expenses and debts incurred by Plaintiff;

I. Award Plaintiff punitive damages;

J. Award Plaintiff the costs of this action and reasonable attorney's fees;

K. Award Plaintiff pre-judgment and post-judgment interest on the foregoing sums;

L. Award Plaintiff such other relief as the Court deems just and proper, including the award of costs and fees.

## VIII. TRIAL BY JURY

Plaintiff respectfully demands a trial by jury on all issues.

**Respectfully submitted,**

s/ Steve Wilson
Steve Wilson, BPR#28460
The Steve Wilson Firm
5100 Poplar Ave., Ste. 2700
Memphis, TN 38137
Tel: 901-337-1300
Fax: 901-372-1446
steve@stevewilsonfirm.com